THE PEOPLE ex rel. LUCY S. DEVELIN, Appellant, *v.* THOMAS B. ASTEN and others, Board of Assessors of the City of New York, Respondents.

*Chapter* 697 *of* 1867 — *construction of* — *Grade of streets* — *damages for change . of* — *where grade not established by law.*

The act (chap. 697 of 1867), authorizing the commissioners of Central park, New York, to alter and amend the present grade of any street, avenue or road, that might be retained by them, and to establish new grades for all other streets within a certain boundary, refers to the existing grade of any road' or street used as such, although such grade may not have been formally established by any law or ordinance of the common council. (Davis, P. J., dissenting.)

Appeal from an order of the Special Term, denying a motion for a mandamus.

This is an application on the part of the relator for a writ of peremptory mandamus directed to the respondents, the board of

assessors, commanding said board, or its members, to ascertain the loss and damage sustained by the relator by reason of the amendment or change of grade in One Hundred and Thirty-eighth street, in the city of New York, between the boulevard and Twelfth avenue.

The facts alleged in the relator's affidavit upon which the application was made are as follows:

First. That the relator is, and for many years has been, the owner of property having a frontage on One Hundred and Thirty-eighth street of 375 feet, upon which is erected a dwelling-house, out-buildings and fences, which property is located between the boulevard and Twelfth avenue, and which buildings were erected more than ten years last past.

Second. That many years prior to 1867 said One Hundred and Thirty-eighth street was opened as a public road or street, and that thereafter, up to the year 1871, was traveled and worked upon an established grade, and was the only means of access to said buildings and lots.

Third. That in the year 1868 the commissioners of the Central park, acting under chapter 697 of the Laws of 1867, greatly amended, altered and changed the grade of said street, and began to grade a portion thereof to conform to said new grade.

That, in the year 1872, the commissioners of public works, pursuant to an order of the common council, proceeded to finish such regulating and grading, and to curb and gutter said street between the boulevard and Twelfth avenue.

Fourth. That the present grade of said street, as established and regulated, is from fifteen to five feet higher than the old grade.

Fifth. That the damage to the relator by reason of the change of said grade is $7,750.

That the respondent, the board of assessors, have proceeded to levy an assessment for the cost of said work upon the property benefited; that, although the relator had presented to the board of assessors her petition requiring said board to ascertain the loss and damage sustained by her by such change of grade, the board had refused so to do.

*W. C. Trull*, for the appellant.

*T. B. Clarkson*, for the respondent.

Brady, J. :

The relator was, and at the time of the presentation of her petition had been for ten years, the owner of property situate and fronting on the north side of One Hundred and Thirty-eighth street, in this city. There were erected upon it a dwelling-house, out-houses and fences. For many years prior to 1867 the street named had been used as a public street or road, and thereafter, up to the year 1871, was traveled upon as a road or street, and was the only means of access to said houses and lots. The commissioners of Central park, under and by virtue of chapter 697 of the Laws of 1867, and in the year 1868, changed the grade of the street, and, in 1869, began to conform it to such change, and, in 1872, proceeded to finish it, and to curb and gutter the street upon the new or changed grade. The relator, having suffered damages in consequence of these proceedings, asked the board of assessors to ascertain and award her the damages to which she had been subjected, and they refused to do it. The refusal seems to rest on the proposition that the grade of One Hundred and Thirty-eighth street had not been fixed or established by any law or ordinance of the common council of the city of New York. This is inferred from the affidavit read on behalf of the city on the motion which the relator made for a mandamus, and which was denied. The act of 1867, *supra*, authorized the commissioners, among other things, to alter and amend the present grade of any street, avenue or *road*, that might be retained by them, and to establish new grades for all other streets within a certain boundary which includes the plaintiff's property. The present means the existing grade of any road or street used as such. It may be that the grade of One Hundred and Thirty-eighth street was not formally established by any law or ordinance of the common council relating to that subject, or having that object expressly in view, but the street or road had been used, and had been recognized as an existing street or road by the legislature. The act of 1864 (chap. 405, § 1, Laws 1864, 940), contains an appropriation to repair it, and in these words: " Roads and avenues as follows : The sum of $4,000 for One Hundred and Thirty-eighth street." It could not be used as a street or road without a grade, and the act of 1867, by the power it confers, contemplates a change, not only

from grades established by law or ordinance, but those existing and at present adopted by general use. The language employed is not to alter and amend the established grade or one made in accordance with any law or ordinance expressly relating thereto, but the present grade; that is, the grade of the street or road as existing and used. Indeed the use of the word "road," shows that it was not the intention of the legislature to confine the award to owners whose property fronted on streets, the grades of which had been established by ordinance. The grades of roads on this island have not been established by ordinance of the common council. The act of 1852 (chap. 52), which relates to the change of established grades, provides for them expressly. Section 1 declares that the grades of the streets and avenues of the city, as now fixed and established by the common council, shall not be changed or altered, except, etc. The act of 1867 authorizes the commissioners of Central park to alter and amend the present grade of any street, avenue, road, etc.; and, by section 3, declares that all damage to any land, or to any building or other structure thereon, existing at the time of the passage of the act on any street, avenue or road, laid out on the map of the city of New York within the district specified, shall be ascertained, etc. The difference between established and existing grades would seem, by comparison of these statutes, to have been in view when the act of 1867 was passed, and hence the use only of the language "present grade of any street, avenue or road," which means either by law duly established, or existing and in use by the public. To construe it otherwise would do injustice. It would deprive owners, as in this case, of all indemnity, who, accepting the existing and established grade established by general use and recognition, built in conformity to it, taking only by the proceeding, properly regarded, the risk of such changes as might be made at some subsequent time. For these reasons the answer made as suggested was not sufficient. It is not denied that the street or road was used as such, and duly recognized as one existing, but only that the grade had not been fixed or established by law or ordinance. It is not true that the grade is not fixed or established by law. It may be, by the general use of the public as it exists, become a grade established by law. The evidence shows that to have been so in regard to One

Hundred and Thirty-eighth street, and the recognition of it as a street or road by the legislature (*supra*), confirms the general use and the then " present" existing grade. The result of these views is, that the relator's application to have her damages ascertained and awarded should have been granted, and that the motion for a mandamus should, therefore, also have been granted. The order made at Special Term should be reversed.

Daniels, J., concurred.

Davis, P. J. (dissenting):

I am not able to concur in the views of my brethren. In my opinion, the statute under which the relator asserts her claim was only intended to give damages in cases where the owner of the land had conformed the buildings thereon to a grade established by law or ordinance and in reliance upon the action of the public authorities, and not to cases where the natural surface of the ground over which a street has been laid, has been voluntarily assumed to be the grade by the party erecting such buildings. In the latter case, the party acts with knowledge that the grade of the street has not been officially established, or, in other words, that there is no " *grade*." He must be held to know that one of the steps necessary to complete the street will be to establish a grade, and to change, so far as required, the natural surface for that purpose. The views of the court, as it seems to me, extend the statute beyond its reason or intent; for it was adopted, as to me seems apparent from an examination of the several statutes relating to the same subject, to change the law as established by the decisions of the courts, in favor of persons who, in reliance upon official acts by which the grade of a street had been fixed and established, have been led to erect buildings conforming thereto, by allowing to such persons the damages sustained by the establishment of a new and different grade. In such a case the owner of the buildings has a right to complain that the official acts have induced him to put himself into a position to suffer damage from a subsequent change of grade, while the person who builds in conformity to the natural surface, assumes to judge for himself that such surface will be adopted, when the street comes to be worked and completed, as the established

grade. His misjudgment is his own fault, and he cannot be said to have been misled, or induced by the public authorities to act with regard to a condition of things established by law or public ordinance.

In my opinion the order below should be affirmed.

Order reversed and mandamus ordered.